## Case No. 16,865a.

### VAN METRE v. MITCHELL.

[1 Pittsb. Leg. J. 122; 2 Am. Law Reg. 279.]

Circuit Court, W. D. Pennsylvania. Nov., 1853.

FUGITIVE SLAVE—ACTION FOR DAMAGES.

[An action will lie at common law for recovery of damages on account of the harboring and concealing of a fugitive slave.]

[This was an action by Garret Van Metre against Robert Mitchell to recover the statutory penalty for harboring and concealing a fugitive slave belonging to plaintiff. There was a verdict for plaintiff (see Case No. 16,865), and defendant moves in arrest of judgment.]

Mr. Shaler, for plaintiff.
Mr. Dunlop, for defendant.

IRWIN, District Judge. The declaration contains two counts for damages for injuries, in substance as follows: "That a certain negro, called Jarred, who, by the laws and customs of Virginia, was held to service and labor in that state by the plaintiff, on the first of September, 1845, left the said service and labor, fled and escaped into the Western district of Pennsylvania; that he was pursued by the plaintiff, with the intent of recapturing him; but that the defendant, well knowing the premises, and with the intent of preventing the plaintiff from arresting the fugitive, and removing him to Virginia, concealed and harbored him, thereby enabling the said fugitive to escape from the labor and service to which he was lawfully held, by means of which, his said labor and service became totally and entirely lost to the plaintiff. The jury having given a verdict for the plaintiff, I will assume the facts just stated to have been fully proved.

The declaration does not conclude against the form of the statute of the 12th of February, 1793 [1 Stat. 302], respecting persons escaping from the service of their masters; nor does it refer to it in any manner, and for this omission a motion is made in arrest of judgment. Can the action be maintained without this conclusion or reference; or, in other words, can an action be supported at common law for the injuries complained of? The fourth section of the act of 1793. which imposes a penalty of five hundred dollars for knowingly rescuing, harboring or concealing a fugitive from labor, concludes with this clause: "Saving moreover to the complainant his right of action for or on account of said injuries, or either of them." What right of action is meant by the clause? Does it arise from and is it limited to the clause itself, so that whatever may be the condition of the fugitive—whether he owes service and labor as a slave, a servant for a term of years, or an apprentice—it is necessary, in case of such injuries as the jury have found, to proceed under the statute and not at com-

mon law? The question can only be truly answered by going beyond the statute of 1793; for if there was no remedy for the injuries contained in the fourth section of that act until the time of its passage, there was, then, no vitality in the constitutional provision on the subject of fugitives from labor, or in so much of the judicial act of 1789 [1 Stat. 73], which confers jurisdiction in the courts of the United States to give relief for injuries "according to law and usage," until the 12th of February, 1793. Such a construction, it is conceived, is not warranted by the letter or spirit of either constitution or law. The clause in the constitution is in the following words: No person held to service or labor in one state under the laws thereof, escaping into another, shall. in consequence of any law or regulation therein, be discharged from such service or labor, but shall be delivered up on the claim of the party to whom such service or labor may be due. A claim in a judicial sense is a demand of some matter as of right made by one person upon another, to do or to forbear to do some act or thing as a matter of duty; and where an act is required, the means are given to make effectual the right, which is seldom possible by a mere delivery to the owner of the fugitive. Before the act of 1793, as well as in this and other instances, this injustice has been but too frequent. The fugitive might have been concealed, harbored and assisted to escape into a foreign country, so that his services might not only have been partially, but totally lost to the owner. I cannot believe that such injuries could have been without remedy. The claim to a fugitive from labor is a controversy arising under the constitution, under the express delegation of judicial power given by that instrument, and the courts of the United States, under the judiciary act of 1789, have "all the powers necessary for the exercise of their respective jurisdiction, and agreeable to the principles and usages of law," which principles and usages are those of the common law. U. S. v. Burr [Case No. 14,692a]. In the case of Johnson v. Tomkins [Id. 7,416], Judge Baldwin, in delivering the opinion of the court, says: "This right of the master results from his ownership, and the right to the custody and ownership of the slave is by the common law, and the eleventh section of the abolition law of Pennsylvania, and other laws of that state;" and in the same case he further states: "The constitution of the state and Union is not the source of those rights. They existed in their plenitude before any constitutions, which do not create, but protect and secure them against any violation by the legislatures or courts, in making, expounding and administering laws." If this opinion of the court is sound,—and I do not see how it can be regarded otherwise,—it follows, that if there had been no constitutional provision or statute for the recaption and delivery of fugitives from labor, the owner of an escaped fugitive

would have had a remedy by action for damages in the court of a state into which he had fled and was harbored, or in a court of the United States, if either had common law jurisdiction. And in the case of Pennsylvania v. Kerr, Add. 326, it was objected by the defendant's counsel that a master could not give authority by advertisement to take his runaway apprentice, as "an act for the regulation of apprentices points out a particular proceeding in case of absconding apprentices." But the court decided "that the act of assembly does not change the common law, but gives further remedy." This last decision is precisely in point, as it cannot be doubted that the words "fugitives from labor" in the act of 1793 extends to apprentices as well as to slaves. From principle and authority thus far I am fortified in the opinion that damages may be recovered for injuries of the nature contained in the plaintiff's declarations at common law; but in the case of Jones v. Vanzandt [Case No. 7,501], which was an action for damages for harboring and concealing a fugitive from labor, the plaintiff among several counts under the act of 1793, inserted one at the common law which became important from several of the former having been abandoned, and a finding for the plaintiff upon two others including the latter. On a motion for a new trial which was ordered, Judge McClean said, that "the defendant is charged with harboring slaves of the plaintiff who had escaped from his service in Kentucky. But the wrong charged is no legal wrong except it is made so by statute, and the fourth count does not refer to the statute, which is a public one, and the only foundation of the plaintiff's right." And in another part of the learned judge's opinion, he says: "It is clear that the plaintiff has no common law right of action for the injury complained of." This decision from the learning and eminent standing of the judge who made it is entitled to the highest respect, and in a doubtful case, I should have mistrusted my own judgment in differing from him. The opinion incited deeper reflection, and if possible deeper conviction, that the conclusion I have arrived at is the law, and indeed as if to fortify this conclusion. Judge McClean himself has said in the same case, that "the statute creates the right and declares what shall constitute the wrong, and for every redress the common law gives a remedy by action for the injury done." If this is true in a case where the statute creates the right, it cannot be disputed in a case where the right existed prior to the statute, and which so far from taking away only serves to confirm. The words "saving moreover to the person claiming such service and labor, his right of action for or on account of the said injuries or either of them" must be construed to mean to preserve, to spare, or to retain a right existing anterior to the statute. Certainly the words "saving his right" in the absence of negative words, cannot mean to take

away a right; they are the appropriate words, in a statute which gives a new remedy, but which intends at the same time to reserve a pre-existing right; by the new remedy a party may take his election to proceed upon the statute or at the common law; the saving clause in the statute is cumulative, and in affirmance of the common law.

Motion in arrest of judgment is therefore overruled, and judgment must be entered upon the verdict.